Good afternoon. Welcome to a regular session of the Court of Appeals for the Federal Circuit. We have six cases being submitted today. Four will be argued and two will be submitted on the briefs. The two submitted on the briefs are number 2007-3133, Rodat against the Department of the Treasury, and 2007-3242, Navarro against the Office of Personnel Management. The first case being argued this afternoon is 2007-5009, Impresa Construzioni against the United States, Mr. Gudansky. Thank you, Your Honor. Your Honor, I have some additional citations that I may pass them up to the Court. Yes, you may give them to the bailiff. There are four cases each. I've put them in the order that I'll be talking about later. I've been closing counsel's set as well. Do you have your set? Not unless it's pressing. Just wait your turn. If you're objecting to the handouts, you can tell us when the time comes. One of the issues that I discussed at page 18 of my reply brief is trying to make the important distinction about the cases cited by the defendant in these voluntary dismissals. And my first case I'd like to direct your attention to is Bianchi versus the United States, 154 F. 3rd, 1023, a 1996 Ninth Circuit case. And in that case, the Circuit Court said the words, quote, final, end quote, the words judgment, end quote, and the words not appealable, end quote, all have clearer meanings when applied to district courts than when applied to the Court of Appeals. The second point I want to make, Your Honor. But to stay with that point, what was not final about the withdrawal of the disappeal? Oh, it was final, but I was appealable. One question before, Your Honor. Well, when you're drawing a distinction between the district court and the appellate court, you want us to conclude that because of whatever distinction, that the withdrawal of the appeal to the Federal Circuit was not a final judgment. I don't want to necessarily say it wasn't a final judgment. And I think the defendants were arguing that since it was a voluntary dismissal, and the lower court saying that there was no really distinction between a without prejudice or with prejudice, I cite the case law that said that the practice is at the appellate level, if it is a voluntary dismissal, it is appealed. Well, what would the ground for the appeal be? What would the ground for certiorari mean for it? That I believe the decisional case law at the Federal Circuit was incorrect with respect to the application of the bid and proposed expenses. That was at issue in that case. Did you file a petition for cert? I did not, but in Youngdale, that was precisely the question the government argued as well. Our case is almost exactly a point. The government in Youngdale said they argued four points. They said, in fact, the plaintiff, the appellant, did not file a petition for certiorari. And they made a few other grounds which I can go into. But bottom line, the judge who decided that case, that's not the question. The question is whether the claimant, the appellant, had a right to file a petition for certiorari. How could you file a petition for certiorari when you would have withdrawn your appeal? You can't complain about a dismissed appeal that was brought about by your own action, can you? I believe you can. That's what the case law is assigned to. Well, Mr. Gidansky, if that were the case, you could skip the Court of Appeals every time, couldn't you? You could appeal, withdraw voluntarily, and then file a written certiorari at the Supreme Court. Is that a proper procedure? I don't think it would be a typical or ordinary procedure. Well, would it be a procedure of any kind of propriety? Are you advocating a procedure that allows litigants to skip the Court of Appeals? No. The circumstances in this particular case were such that since the parties had entered into discussions... You voluntarily withdrew your appeal, and then you say, and I have an appeal to the Supreme Court, I can file immediately for certiorari? There's been no decision to the contrary. I haven't found any. No one else would probably try that sort of a procedure, skipping a court of appeals. It's important to consider that aspect only in the context of how that arrives at the period of time within which to file each application. But the each application time is tied to the question of whether the judgment can be appealed further. And that's what we're asking about, is whether there's any possibility that you could go to the Supreme Court after having dismissed your appeal. I mean, after all, you do, under the statute, it does provide a mechanism for skipping the Court of Appeals if you want to do it, and that's called certiorari before judgment. But you can't file for certiorari before judgment once you've dismissed your appeal before the Court of Appeals. The cases seem to say that a voluntary dismissal does permit, if your goal is to get to a result quicker, that it does permit a voluntary dismissal. Which case, what's your best case in terms of being able to go to the Supreme Court from the Court of Appeals once there's been a voluntary dismissal? Mr. Gedanski, can you speak right into that microphone, too? I'm having a little trouble hearing you. Yes, sir. Thank you. I believe it's the Youndell case, but there's one other case. You can give us the cases during the rebuttal period if you need more time to find them. Tell us what else you want to tell us in your appeal. The other thing from the Bianchi case is that this is our secondary argument. I said in our reply brief, you can find the case directly on point. But the Bianchi case also said that this is on the question of whether or not the Court of Appeals would be able to go to the Court of Appeals on the question of when the time begins to run. And it said that a federal appellate judgment is not final, this isn't dicta, until the mandate is spread in the district court. So that does support our secondary argument that you could consider the mandate as being timed from when it was filed, when the lower court actually entered it on the docket entry sheet. Except that Rule 41C says the effectiveness is not delayed until receipt of the mandate by the lower court. Doesn't that sort of answer the question? Yes. We know that there were errors. You can't tell from the briefs where the error was in terms of why it took so long for the mandate to reach the trial court. But they compensated for that by deeming your initial request to have been timely filed, but it was still after three months, three months after the initial final judgment, the withdrawal of the appeal. Well, in that case, that brings me to an interesting point. I think the other case, by the way, I want to cite is Adams v. the SEC at 287 F. 3rd 83. And one other case which perhaps may provide an additional avenue for this Court to consider, and that is Uchia v. Bancroft. That's a 2006 case. But the point it made on this aspect is that in discussing Scarborough, it said, although Scarborough became the Supreme Court case, the Court explicitly left open the question of whether the EJIA time limitation for fee applications is subject to the equitable tolling language. And I think that since that Court recognized that Scarborough had left open that question, that an EJIA application is not necessarily jurisdictional in terms of the time limitation, that equitable tolling should be applied in this particular instance. I think the confusion that the lower court had would allow for that latitude, for that application to be considered in that context. I gather that there was no attempt to make a representation as to why the delay was excusable, that rather the argument was that this is contemplated by the statute because the period for calling the petition hadn't run? Yes. Okay. Let's hear from the other side, and you have your full time left for rebuttal. Good afternoon. May it please the Court. This Court should affirm the decision of the United States Court of Federal Claims, which denied the appellant's motion to file an EJIA application because it wasn't timely. Now, before I get to the basic arguments in my brief and of my argument today, I'd like to place an objection on the record to the new cases that Mr. Godansky handed the Court this afternoon at the start of his argument. What about Adams? Doesn't Adams support him? I mean, I hadn't seen this before, but the D.C. Circuit, if I understand it correctly, seems to be saying that we want to have a blanket rule that the EJIA application is due when the time for appeal expires, whether or not an appeal would lie. Am I misreading the case? Well, Your Honor, first of all, Adams is not the controlling president of this circuit. Secondly, I just... Well, I understand that, but address my question about Adams. Well, in Adams, Your Honor, the appellant has cited the case for the portion which states that rulings on EJIA should not be a trap for the unwary, but I don't think that is applicable to the case here. But isn't the Adams case saying that the D.C. Circuit is going to apply a blanket rule that the EJIA application is due 30 days after the appeal period expires, whether or not an appeal would actually lie? Am I misreading it? Well, Your Honor, what they held in Adams was that basically the 30-day filing deadline would start immediately upon the issuance of the order of dismissal, which is what happened in this case. Right, but they're saying, if I understand correctly, and I've just skimmed the case, but they seem to be saying, regardless of whether there was really an appeal of the order, that the D.C. Circuit is setting a mechanical rule that the EJIA application is going to be due after the appeal period runs, whether or not you can actually file an appeal. Well, actually, Your Honor, I only was able to skim the case as well, as I just received it 15 minutes before we started the argument today. And in skimming it, that's not what I read when I read the opinion. But if it does state that, it would be contrary to all of the other circuits and all of the other cases that have been cited in both the government's brief and the appellant's brief. Well, but have the other cases involved EJIA applications? Yes, they did. The cases we rely upon, Brissetto and Bryan, both involved EJIA applications. And in those cases, the court ruled that because there was no right of appeal, there was no appeal period to be worked into the 30-day time limitation for when to file their EJIA petition. And that's exactly what is happening in this case here. Mr. Gdanski voluntarily and unilaterally dismissed all of his claims on appeal. And at that moment, the time limit for filing an EJIA petition began. Now, contrary to what he argues, voluntary dismissals are not appealable per se. A review of the cases in the other circuits shows that voluntary dismissals are only appealable when there has been some kind of an adverse component upon which the appellant may appeal. For example, in the Empire Volkswagen case. That seems to be correct. And there's no basis for believing that he could have appealed this in any meaningful sense. The question is whether that's determinative or whether there should be a uniform rule for the filing of an EJIA application which tacks on the appeal period, even whether or not an appeal could run. In other words, the D.C. Circuit seems to be saying it's too hard for us to figure out whether a particular dismissal is appealable or not appealable. We're just going to have a flat rule that they get 30 days coming from the district court or translating to 90 days to go to the Supreme Court. Your Honor, such an interpretation and such a rule would be directly contrary to the plain language of the EJIA statute. Now, EJIA is a partial waiver of the government's sovereign immunity that requires the government to pay attorney's fees where it otherwise would not be required to. And as such, the statute has to be strictly interpreted. And under EJIA it states that a petition for fees under the statute must be filed within 30 days of final judgment. And final judgment is later on defined in the statute to be a decision that is final and not appealable. In this case, because the decision of the federal circuit dismissing the appeal was final and not appealable, that is when the EJIA time began. You say it's not appealable not as a matter of the fact that it was a final judgment but the fact that it was a voluntary dismissal to which both sides agreed. Is that why you say it's not appealable? That's correct, Your Honor. It was not appealable because it was a voluntary dismissal that dismissed all the claims that were pending upon appeal. Now, the difference in the cases cited in the appellant's brief is that in each one of those decisions there was some kind of an adverse decision. For example, in Empire Volkswagen, the appellant's claims were partially dismissed on summary judgment. Now, in order to expedite an appellate review of those claims, the appellant dismissed the claims that it had remaining and was able to appeal the claims that were partially dismissed on summary judgment. So you're not saying that every final judgment is in this category. You have to go beyond the fact that there's a final judgment and look at the subject matter of the judgment and see whether any particular issues may have survived one way or another and be appealable or not. So it isn't really a blanket rule that the 30 days always runs from the dismissal. Is that right? That's correct, Your Honor. Under Melconian, the Supreme Court rules that any appeal period would be factored into the 30 days. But in this case, there's no appeal period to be factored into. You're saying because it's a petition for certiorari and therefore not appeal as of right that there's no appeal period? Lawyers have the right to appeal to the Supreme Court. They have the right to decline to accept the appeal. But the right is there. In this case, there was no right to petition for cert because the claims were voluntarily dismissed. Take a look at page 5 of Adams in the right-hand column. It says, The Commission interpreted the word unappealable in its Egypt regulation to require a case-by-case determination as to whether authorities agreed and thus could file an appeal to withstand dismissal for lack of standing. Such an interpretation is inconsistent with the underlying purposes of Egypt. They seem to be saying even if you couldn't appeal, you'd still get the 30 days, or in this case, 90 days. I don't know whether that's right or not, but this does seem, at first impression, to be supportive of the position they're taking. If that is what this decision states, then it's contrary to the existing case law in the other circuits, and it's contrary to the specific language of the Egypt statute. The Egypt statute states that a final judgment is one that is final and not appealable. And once the judgment is issued that is not appealable, then that is when the clock starts. But I do think that your argument hasn't been totally consistent because you agree, as you must, that some dismissals may have appealable components to them. That's true. Other circuits have held that there are voluntary dismissals that are appealable in limited circumstances. For example, as an example that I gave the entire Volkswagen case, if there were some claims that were adversely dismissed, an appellant or a plaintiff may voluntarily dismiss the remaining claims, for example, if they are the smaller claims, in order to expedite review of the claims that were adversely dismissed or adversely ruled upon. In the Johns Insulation case, an appeal was sought of interlocutory orders that were adverse to the appellant. And that's what the difference is here. Now, Empire Volkswagen specifically ruled that the appellant could not appeal claims that it had voluntarily dismissed. You're saying only interlocutory orders fall within that? I'll call it an exception. I don't think that that's what the case is saying. No, that's not what the cases say. What the cases say is that voluntary dismissals are not appealable per se, but there are limited circumstances in which they are. And a reading of the cases shows that if there's some kind of an adverse decision, an adverse component that is appealable for that appellant, then they can appeal the decision. The risk they take is that if they lose on appeal, then their entire case is gone. Now, the Second Circuit in the Chappelle case was specifically worried about what Mr. Godansky claimed he wanted to do here, which was basically to file a voluntary dismissal with this court and seek cert with the Supreme Court. And what the Second Circuit in Chappelle was worried about was that that would essentially give interlocutory review where otherwise one was not available. That's not what he's saying. He's saying that it wasn't his intention, or at least he hasn't focused on it, because we don't know what the intentions were. He says that the time hadn't run, not that he did or didn't have to seek cert with the Supreme Court. He just told us that he did not. It's entirely a question of how much time he had before he had exhausted the possibility of seeking attorneys' fees. That's correct, Your Honor. If you look at the Malconian case, the Supreme Court states the question is not whether or not the appellant was going to seek cert from the Supreme Court. The question is whether he or she had the right to. And in this case, Impresa did not have the right to seek cert from the Supreme Court because it voluntarily dismissed all of the claims that it had pending and thus rendering a final decision, which started the Isha Clock. Okay. We have the argument. I'd just like to put on the record my objection to these new cases. I think that there's no excuse for these cases to not have been cited in the brief. We will take judicial notice of everything that's been officially reported. Thank you, Ms. Goodman. For these reasons, the decision of the Court of Federal Claims should be affirmed. If I could, in reverse order, first of all, the issue of sovereign immunity and the granting and the labor and how that must be construed, one of the cases I cited to you explicitly recognized that, but said the government, the protective device for the government is, it's got that rule in Ija that no Ija award will remain in unjust circumstances, so the government is always protected. But the Youngdale case, Your Honor, is very consistent with the Adams case because all the judge looked at there was, how do I compute the amount of time? Is that one of the cases that you ended up with? The Adams case? Is that one of the cases you ended up with? Yes, the Adams case, the one you spoke about a minute ago. What about Youngdale? Youngdale is cited in my brief because it's consistent with the logic behind Adams, which is how do we construe, how do we measure, how do we draw a timeline? What is the time permitted to a plaintiff? And that's exactly what Youngdale said. It didn't matter whether the plaintiff was going to file a view of certiorari. As a matter of fact, the plaintiff in that case, the reality of it is that he was in no different circumstances than my plaintiff. He was dismissed for failure to prosecute. So, I mean, one of the reasons that the commentator suggests is that perhaps a litigant would like to voluntarily dismiss something is to not put himself in a position, an untenable position, if you're repeatedly before the circuit, of being dismissed for failure to prosecute. You don't want to do that. But the government is correct, are they not, that there was no way that you could have brought an appeal. That's not true. There was no issue. I don't concede that. But even if, for the moment, even if you concede that as a proposition, it doesn't affect the time limit to measure when filing each claim. But I don't concede it because, first of all, the case that I was looking for, and it was my most important case, was the John Insolation case where the First Circuit said, quote, It is no longer the rule that voluntary dismissals are unappealable. To the contrary, most circuits hold that voluntary dismissals, and especially those with prejudice, are appealable final orders. But they're talking about an appeal from the district court to the court of appeals, not a petition for cert under all of the circumstances that exist here. I think the principles are equally applicable to whether there's an appellate term. And point of fact, the only cases cited by the government are district court cases, not cases where an appellant is seeking an appeal from an appellate court to the Supreme Court. So I think the rationale in Adams really is what ultimately this court should look to. And the precedent in the Second Circuit notwithstanding, I think you'll find that most circuits do honor the proposition that a voluntary dismissal is appealable. Mr. Goudansky, is there any reason that Adams wasn't in your briefing? You know, when I received notice that this case was incurred in New York, I was gratified because I'm from New York. It just so happens that this particular week I was on vacation in Florida, so I flew back to New York. And to get here on time, I did the benefit of, as most litigators do, you do an update with Lexis before you go to oral argument. This is a 2002 case. Yes. Your brief was not written. That's right. I regret it was not included in the brief. But I'm sure your Honor's... I'm trying to figure out... I think your answer is there is... I missed it. No question about it. And in a number of these decisions, though, the court goes off on issues not argued by either side. And I'm sure the court itself would have found this case. Okay. Any more questions for Mr. Goudansky? Any more questions? Okay. Thank you, Mr. Goudansky and Ms. Keneally. The case is taken under submission.